United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 15, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 29, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————————

No. 04-10194

————————————

CLARA PATRICK,

Plaintiff-Appellant,

versus

TOM RIDGE, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before REAVLEY, DAVIS, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Clara Patrick appeals the district court's

grant of the summary judgment motion of Defendant-Appellee, Tom

Ridge, Secretary, Department of Homeland Security,[1] dismissing

Patrick's claims grounded in age discrimination and retaliation

---

[1] The defendant in this suit, and Patrick's current
employer, is the Department of Homeland Security ("DHS"). This
department was created, however, after the events at issue in
this case took place. After creation of the DHS, the Immigration
and Naturalization Service ("INS") and its named representative,
John Ashcroft, successfully moved to substitute the DHS and
Secretary Ridge as defendants. At all times relevant to this
lawsuit, however, Patrick worked for the INS. Therefore, it is
the agency to which we refer throughout the opinion, despite the
fact that the DHS and Secretary Ridge are now the named
defendants in this suit.

under the Age Discrimination in Employment Act ("ADEA").[2]  The district court based its dismissal on a determination that (1) Patrick had proved her prima facie cases; (2) her employer had produced legitimate, nondiscriminatory reasons for its employment action vis-à-vis Patrick; and (3) she had not demonstrated that her employer's legitimate, nondiscriminatory reasons for not promoting her were pretextual.  Concluding that the employer's responses do not qualify as "reasons" for purposes of McDonnell Douglas[3] and Burdine,[4] we reverse and remand.

## I.  FACTS AND PROCEEDINGS

In the instant case, Patrick advances charges of age discrimination and retaliation arising out of the INS's refusal to promote her to a supervisory position for which she had applied.  In 1989, Patrick began working for the INS's Central Region Administrative Center ("CRAC") in Dallas, Texas as a Contracting Officer and Realty Specialist at the GS-11 pay grade.[5]  The INS upgraded Patrick to GS-12 pay grade in 1993.

---

[2] 29 U.S.C. § 621 et seq.

[3] McDonnell Douglas v. Green, 411 U.S. 792 (1973).

[4] Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

[5] Patrick states in her claim that she was born in 1938 and has therefore been over forty years of age and within the class protected by the ADEA at all times relevant to this lawsuit.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)(stating that the protected class under the ADEA includes employees over forty).

In 1999, Patrick applied for a position as a GS-13 Supervisory Realty Specialist ("SRS"). She was denied this promotion, which was given instead to one of Patrick's co-workers who is more than ten years her junior. Patrick timely filed a charge of age discrimination with the EEOC. She eventually brought suit against the INS on this first claim, but, in 2002, the district court granted the INS's motion for summary judgment and dismissed Patrick's first claim.

Between the time that she brought suit on her first claim and the date of its dismissal, the SRS position again became available and Patrick reapplied. At the time of her second promotion application, Patrick had more than twelve years experience as a Realty Specialist at the INS and had served as an acting SRS on several occasions. The Human Resources Department at the INS selected Patrick and five other applicants as finalists to be interviewed by a three-person panel. Panel member Daniel Pomplun, Director of the Facilities and Engineering Division of CRAC, served as the panel's selecting official and was charged with making the final selection decision.

The panel interviewed the six finalists and rated them based on (1) each candidate's strengths, (2) how each responded to a uniform set of questions, and (3) how the panel members believed that each would fit into the work group. Pomplun acknowledged in a declaration produced in support of the INS's motion for summary judgment that, during the time that he was considering candidates

for the SRS position, another employee in his division told him about Patrick's prior EEOC complaint.[6] In his declaration, Pomplun stated that this information had no bearing on his decision not to select Patrick. In a separate (and contradictory) statement to the EEOC, however, Pomplun claimed not to have had any knowledge of Patrick's former EEO activity.

Pomplun and the panel eventually decided not to select any of the six candidates interviewed for the position. As a result, another panel member, Robert Gawel, recommended that an outside candidate, Margaret Hartigan, be considered for the position. After interviewing Hartigan, Pomplun selected her for the SRS position, stating that Hartigan was the "best qualified" person for the position.

This took place before Patrick's original action was dismissed in 2002 and prompted Patrick to amend her original 1999 complaint to include new charges of age discrimination and retaliation grounded in the agency's 2001 decision to deny Patrick the promotion and hire Hartigan instead. When the district court subsequently granted the employer's first motion for summary judgment and dismissed Patrick's 1999 claims, the INS filed a motion for summary judgment on her 2001 claims, which the district court granted. Patrick timely filed her notice of appeal of the

_____

[6] The INS offered Pomplun's statements in the form of an unsworn declaration under penalty of perjury, as permitted by 28 U.S.C. § 1746.

4

district court's latter grant of the INS's summary judgment motion.

## II. ANALYSIS

A. <u>Standard of Review</u>

We review a grant of summary judgment <u>de novo</u>, applying the same standard as the district court.[7]  A district court may grant summary judgment if, viewing the facts in the light most favorable to the nonmovant, the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[8]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[9]

B. <u>McDonnell Douglas Burden-Shifting</u>

We employ the familiar <u>McDonnell Douglas</u> burden-shifting framework when, as here, we review the grant of an employer's summary judgment motion to dismiss an employee's ADEA claims based on only circumstantial evidence.[10]  First, the employee must prove

---

[7] <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 308 (5th Cir. 2004).

[8] <u>Id.</u>

[9] <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).

[10] <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). Although <u>McDonnell Douglas</u> was a race discrimination case, the same three-step burden-shifting analysis applies to ADEA cases, <u>Evans v. City of Houston</u>, 246 F.3d 344, 349 (5th Cir.2001), and to retaliation claims.  <u>Rios v. Rossotti</u>, 252 F.3d 375, 380 (5th

a prima facie case of discrimination.[11]  The requirements for a prima facie case vary slightly with the type of claim brought[12] but an employee's establishment of a prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee.[13]

To rebut the presumption of discrimination created by the employee's prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for its decision.[14]  As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason.[15]  But, if the employer meets its production burden, the presumption of discrimination created by the plaintiff's prima facie case falls away and the factual inquiry becomes more specific.[16]  To avoid dismissal on the employer's motion for summary judgment, the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination.[17]

_____

Cir. 2001).

[11] Id. at 802.

[12] Id. at 802 n.13.

[13] Burdine, 450 U.S. at 255.

[14] Id.

[15] Id.

[16] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

[17] McDonnell Douglas, 411 U.S. at 804.

In other words, after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must now demonstrate that there is a material issue of disputed fact as to discrimination, the ultimate question <u>vel</u> <u>non</u>.[18]  In some instances, proof of pretext alone will suffice.[19]

1.   Context

The framework in which we review this case on appeal is key. First, the ruling we review is one that grants a summary judgment motion before trial, not a motion for judgment as a matter of law following a merits trial or even following the completion of the plaintiff's case when the record is not yet complete.  Second, the summary judgment motion was filed by the defendant employer, not the plaintiff employee.  If, at this stage of the litigation, the plaintiff employee has produced evidence sufficient to make out a <u>prima</u> <u>facie</u> case and the defendant employer has failed to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for its employment decision, the employee is entitled to take her case to a jury.[20]  It is in this context

---

[18] See <u>Long v. Eastfield Coll.</u>, 88 F.3d 300, 308 (5th Cir. 1996).

[19] <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).

[20] See <u>Fisher v. Vassar Coll.</u>, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc) ("The presumption [established by the plaintiff's <u>prima facie</u> case] means that, unless the defendant comes forward with a non-discriminatory reason for the action complained of, the plaintiff's case may go to the jury, even though the prima facie case might be insufficient — apart from the presumption —

that we proceed.

2.   <u>Prima Facie Case</u>

The district court ruled (and the INS does not challenge on appeal) that Patrick succeeded in making out a <u>prima</u> <u>facie</u> case for both age discrimination and retaliation.   We therefore do not address this first step in the <u>McDonnell Douglas</u> minuet.   Rather, we proceed to the second step —— the employer's legitimate, nondiscriminatory reason for its acts.

3.   <u>Legitimate, Non-Discriminatory Reason for Failure to Promote</u>

An employer may avoid liability for charges of both discrimination and retaliation by producing evidence tending to show that it had a legitimate, nondiscriminatory reason for its disputed decision.   In opposition to both of Patrick's claims, discrimination and retaliation, the INS offers the same justifications for its decision.   As we conclude that neither putative reason satisfied the INS's burden of production, Patrick's <u>prima</u> <u>facie</u> cases survive.

    a.   <u>First Reason: Patrick was "Not Sufficiently Suited" For</u>
        <u>the Position</u>

The INS first proffers as a legitimate reason for not promoting Patrick that she was not "sufficiently suited" for the SRS position.   The agency asserts that none of the six applicants

---

to meet the plaintiff's ultimate burden of showing discrimination. . .”), <u>abrogated on other grounds</u>, <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133 (2000).

initially interviewed was sufficiently suited and that this is why it subsequently conducted an interview with Hartigan and hired her. Yet, no evidence in the summary judgment record clarifies or expands on the statement of the INS that Patrick was not "sufficiently suited for the job" other than Pomplun's statement that he evaluated candidates based not only on work credentials and experience but also on how he thought that the candidate would fit into the work group. The INS gave no explanation of what this means and produced no specifics for why Patrick would not fit in with the group.

Fatal to the INS's position here is the well-established rule that, to meet its burden of production under McDonnell Douglas, an employer must articulate a nondiscriminatory reason with "sufficient clarity" to afford the employee a realistic opportunity to show that the reason is pretextual.[21] This does not mean that an employer may not rely on subjective reasons for its personnel decisions.[22] It does mean, though, that to rebut an employee's prima facie case, a defendant employer must articulate

_____

[21] Burdine, 450 U.S. at 255-56 (emphasis added). See also Hill v. Miss. State Employment Serv., 918 F.2d 1233, 1239 (5th Cir. 1990) (per curiam) (expressing doubt as to whether a justification of "general inefficiency" was sufficiently clear and specific to meet an employer's burden of production).

[22] See, e.g., Medina v. Ramsey Steel Co., 238 F.3d 674, 681 (5th Cir. 2001) (holding that plaintiffs are not required to satisfy subjective criteria to prove their qualifications for purposes of the prima facie case, but that the issue of subjective qualifications is dealt with at later stages of the analysis).

in some detail a more specific reason than its own vague and conclusional feeling about the employee. The Eleventh Circuit illustrated this point by contrasting hypothetically legitimate reasons with illegitimate reasons for an employer's refusal to hire a waiter:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion ⸺ the applicant's bad (in the employer's view) appearance.[23]

If the INS believed ⸺ and had verbalized ⸺ that Patrick was not "sufficiently suited" to fill the SRS position because of her experience, credentials, attitude, or some other such articulable characteristic, the agency's reason might have provided enough detail to enable Patrick to attempt to show pretext. In the face of the INS's bald and amorphous statement that Patrick simply was "not sufficiently suited," however, neither we nor Patrick can identify the kind of evidence needed to demonstrate that such a rank generalization is or is not pretextual.

In fact, the explanation given by the INS, i.e., that Patrick was not "sufficiently suited" for the position ⸺ even including

_____

[23] Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir. 2000)(en banc).

10

Pomplun's belief that she would not "fit in" — does not necessarily qualify as a "nondiscriminatory" reason. After all, a hiring official's subjective belief that an individual would not "fit in" or was "not sufficiently suited" for a job is at least as consistent with discriminatory intent as it is with nondiscriminatory intent: The employer just might have found the candidate "not sufficiently suited" because of a protected trait such as age, race, or engaging in a protected activity. We hold as a matter of law that justifying an adverse employment decision by offering a content-less and nonspecific statement, such as that a candidate is not "sufficiently suited" for the position, is not specific enough to meet a defendant employer's burden of production under McDonnell Douglas. It is, at bottom, a non-reason.

    b.    Second Reason: The "Best Qualified" Candidate Was Selected

The INS next tendered as a nondiscriminatory reason for not promoting Patrick its conclusion that Hartigan was the best qualified candidate. It is undisputed, however, that Hartigan was not even under consideration for the job at the time that Patrick was denied the promotion. Only after Patrick and the other five had been denied the promotion did the INS identify Hartigan as a potential candidate. The district court erred when it held that this timing had "no bearing" on the employer's proffered nondiscriminatory reason.

We acknowledge that choosing some other candidate because he

11

is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision.[24] We are also mindful of the Supreme Court's admonition that courts are not to assess the employer's credibility or the truthfulness of its reason at this stage of the inquiry.[25] This does not mean, however, that when an employer offers evidence of an otherwise legitimate, nondiscriminatory reason which unmistakably demonstrates that it <u>could</u> <u>not</u> <u>have</u> <u>motivated</u> the employer to deny the promotion to a qualified candidate, such an indisputable impossibility cannot satisfy the employer's burden of production. To make this determination, we do not have to assess the credibility of the INS; its own statements confirm that it had already rejected Patrick before it ever identified Hartigan as a potential candidate and invited her to apply for the position.

We hold as a matter of law that an employer who offers the relative qualifications of the applicants as its legitimate, nondiscriminatory reason must show that, at the time it made the decision adverse to the complaining applicant, it already knew that the ultimately selected individual's qualifications were superior.[26]

---

[24] See <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 721 n.2 (5th Cir. 2002).

[25] See <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 509.

[26] See, e.g., <u>Crapp v. City of Miami Beach Police Dep't</u>, 242 F.3d 1017, 1020 (11th Cir. 2001)("Because the [Florida Department of Law Enforcement] did not make the decision to suspend Crapp's certification until after his termination, it cannot serve as a legitimate, nondiscriminatory reason for Crapp's termination. .

12

It is axiomatic that the ultimate factual inquiry in an employment discrimination case is whether the employer intentionally discriminated against its employee.[27]  Albeit in a mixed motive case, the Supreme Court in <u>Price Waterhouse v. Hopkins</u> emphasized that an employer may not prevail with respect to this ultimate inquiry by offering a "legitimate and sufficient reason for its decision if that reason did not motivate it <u>at the time of the decision</u>."[28]  The Court went on to define its "snapshot" inquiry into an employer's motive as limited to the instant that the decision was made:

In saying that gender played a motivating part in an

---

.");  <u>Walker v. Mortham</u>, 158 F.3d 1177, 1182 n.8 (11th Cir. 1998)("Our precedent requires that if a defendant raises as its legitimate, nondiscriminatory reason relative qualifications of the applicants, the defendant 'must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made.'") (internal citation omitted); <u>Perkins v. Brigham & Women's Hosp.</u>, 78 F.3d 747, 751 (1st Cir. 1996)("It is true that an employer's proffered justification must be based on information that it knew and relied upon at the time it decided to take the adverse employment action."); <u>Turnes v. AmSouth Bank</u>, 36 F.3d 1057, 1061 (11th Cir. 1994)("[A]lthough it is true that the employer need not <u>prove</u> it was actually motivated by the proffered reason, <u>Burdine</u> clearly does not relieve the employer from <u>producing</u> a reason that was available to it at the time of the decision's making.")(emphasis in original); <u>Sabree v. United Bhd. of Carpenters & Joiners Local No. 33</u>, 921 F.2d 396, 404 (1st Cir. 1990)("Unless, therefore, a defendant articulates a "legitimate non-discriminatory reason" that <u>actually</u> motivated the decision, the reason is legally insufficient.")(emphasis in original).

[27] See <u>U.S. Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 714 (1983).

[28] 490 U.S. 228, 252 (1989)(plurality opinion)(emphasis added).

13

employment decision, we mean that, if we asked the employer <u>at the moment of the decision</u> what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or the employee was a woman.[29]

In the context of evaluating the weight of after-acquired evidence on a discharged employee's claims, the Court in <u>McKennon v. Nashville Banner Publishing</u>, squarely stated that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."[30]  The Court in <u>McKennon</u> reiterated its pronouncement in <u>Price Waterhouse</u> which emphasized "the necessity of determining the employer's motives in ordering the discharge, an essential element in determining whether the employer violated the federal antidiscrimination law."[31]

The purpose of the <u>McDonnell Douglas</u> framework and, specifically, that of imposing on the employer a burden of producing a legitimate, nondiscriminatory reason for its actions, is to "sharpen the inquiry" of the court with respect to the

---

[29] <u>Id.</u> at 250 (emphasis added).

[30] 513 U.S. 352, 360 (1995).

[31] <u>Id.</u> (citing <u>Price Waterhouse</u>, 490 U.S. at 252).  It does not necessarily follow, however, that if, in a trial on the merits, an employer adduces probative evidence that (1) all initial candidates for a promotion were unsuited and (2) the subsequently identified and selected candidate was superior and suited, in addition to a legitimate nondiscriminatory reason for its decision, such an employer cannot defeat a charge of discrimination or retaliation.

14

ultimate issue in the case, intentional discrimination.[32]  Although McKennon and Price Waterhouse discussed the ultimate determination of an employer's liability, rather than the employer's Burdine burden of producing a legitimate, nondiscriminatory reason, the directive of those decisions for courts to "take a snapshot at the moment of the allegedly discriminatory act"[33] is fully apposite to the inquiry whether an employer has satisfied this intermediate burden by advancing after-acquired knowledge as a justification for its decision.  As the ultimate issue is the employer's reasoning <u>at the moment</u> the questioned employment decision is made, a justification that <u>could</u> <u>not</u> have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant at this stage of the inquiry.[34]  Especially in the context of this case — the employer's summary judgment motion to dismiss — such an offering is tantamount to

---

[32] Burdine, 450 U.S. at 253, 256 n.8.

[33] Sabree, 921 F.2d at 404.

[34] See Price Waterhouse, 490 U.S. at 252 ("[P]roving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made.")(internal quotations omitted).  See also Burdine, 450 U.S. at 255-256 ("The explanation provided must be legally sufficient to justify a judgment for the defendant. . . Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.  <u>The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions</u>.")(emphasis added).

offering no reason at all.

As we hold that the INS has not met its burden of producing a legitimate, non-discriminatory reason, we never reach the question whether Patrick could demonstrate pretext, much less whether discrimination actually motivated her employer's decision not to promote her. Patrick's prima facie case thus pretermits summary judgment dismissal of her action, leaving the ultimate question of discriminatory animus to be determined by the trier of fact.

## III. CONCLUSION

In the context of an employer's motion for summary judgment seeking dismissal of an employee's discrimination or retaliation suit, a holding that the employer's offered reasons for its adverse decision does not fulfill its burden of production under McDonnell Douglas is the legal equivalent of the employer's having produced no reason at all. And, because Patrick has (1) established prima facie cases of discrimination and retaliation and (2) the INS has failed to satisfy its burden of producing a legitimate, nondiscriminatory reason for its employment decision, the McDonnell Douglas pas de deux is over and the INS's motion for summary judgment must be denied. We therefore reverse the district court's grant of the INS's motion for summary judgment and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.