United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-30777
(Summary Calendar)

THOMAS MONTEVERDE,

Plaintiff-Appellant,

versus

NEW ORLEANS FIRE DEPARTMENT;
CHARLES PARENT, Superintendent,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:03-CV-992-C

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Pro-se plaintiff, Thomas Monteverde ("Monteverde"), a Caucasian male, appeals from the

order and final judgment of the district court dismissing his employment discrimination claims brought

under 42 U.S.C. §§ 1981, 1983, and 2000d. The court issued the order and final judgment after

_____

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

granting a motion for summary judgment in favor of the defendants, the New Orleans Fire Department and Charles Parent, the department's African-American superintendent (collectively "NOFD"). On appeal Monteverde brings a hodgepodge of contentions that, in one way or another, allege reverse race discrimination. Notwithstanding, the substance of Monteverde's claims can be condensed into the following claims of error: the district court erred in granting the NOFD's motion for summary judgment on Monteverde's claim of (1) race discrimination, (2) retaliation, and (3) hostile work environment. We find no error and therefore AFFIRM the order and final judgment dismissing Monteverde's claims with prejudice.

## BACKGROUND

The crux of Monteverde's claims allege that he was discriminated against by the NOFD because it unfairly disciplined him and failed to promote him based on race, and because it retaliated against him for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The facts surrounding his claims evolve primarily out of two separate incidents.

The first incident occurred on February 26, 2002, when Monteverde and his subordinates responded to an accident scene involving an infant trauma victim. The district court determined there were undisputed facts indicating that when the firefighters arrived at the accident scene Monteverde, against department standard operating procedures, ordered a subordinate firefighter not to administer medical attention to the injured infant victim. As a result of this improper command, Monteverde was given a letter of reprimand. A peer review board later determined that Monteverde violated standard operating procedures and should have interfered with treatment of the injured child. (Rec. Vol. II, at 330, 386-88) Notwithstanding, Monteverde contends he was singled out for discipline because of his race, as none of the other firefighters at the scene, who were all African-American, were

2

disciplined.[1] After receiving the letter of reprimand, Monteverde filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") in November of 2002, citing the foregoing incident.

The second incident occurred on April 7, 2003. Monteverde alleges he went before the NOFD to interview for the position of district chief ("the promotion interview"). A total of three applicants, including Monteverde, interviewed for that position; all three applicants held the title of captain. Monteverde alleges that during his interview the NOFD made statements suggesting or requesting that he join a health club because of his inability to successfully complete the Firefighter's Challenge.[2] Sometime after the interview, the NOFD promoted Norman Woodrige, an African-American, to the position of chief instead of Moneverde or the other applicants.[3] Monteverde cites

---

[1] The district court noted that in support of his claim that he was singled out, Monteverde argued that his subordinates should not have followed his orders because: (1) it was not a fire scene so rank did not matter and the other firefighters were wrong in following his orders; and (2) the NOFD was at fault in allowing him to become certified by the state in emergency medical procedure because he had missed some of the training sessions.

[2] The Firefighter's challenge is a series of fitness and agility tests used to evaluate the physical conditioning of new recruits. If recruits do not complete the tests within a prescribed amount of time, they can be denied employment. Although in-house fireman are not required to complete the test within any prescribed amount of time, they must at least complete the tests. Monteverde was initially denied being placed on the lists of candidates for the position of district chief due to his poor timing in completing the tests. That decision was later overturned by the Peer Review Board and Monteverde was placed on the list of qualified candidates and was eventually interviewed for the position. The NOFD determined that Woodridge was the best qualified candidate, making no mention of either candidate's physical conditioning.

[3] Monteverde also alleges that subsequent to the April 7, 2003 interview, he was disciplined by the NOFD, for allegedly making false statements during the interview. The district court could not discern from the record the exact nature of those statements. What can be gleaned from the appellate record, however, is that in an effort to explain his poor performance on the Firefighter's challenge, Monteverde made statements during his interview purporting that he had previously informed Warren McDaniels, the former superintendent of the NOFD, in confidence his reasons for his inability to complete the challenge. The record indicates that Assistant Superintendent Edwin

3

the NOFD's decision to promote Woodridge instead of him as one instance of discrimination for his failure to promote claim. As to the other instance, Monteverde points to the NOFD's decision to discipline him for the allegedly false statements he made during his interview.[4]

Monteverde received his first Right to Sue letter for the allegations stemming from the first incident on February 26, 2002. He received his second Right to Sue letter for the allegations stemming from the second incident on April 7, 2003.

## STANDARD OF REVIEW

We review *de novo* a district court's grant of a motion for summary judgment, applying the same standard as the district court did in the first instance. See Burge v. Parish of St. Tammany, 187 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes "there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court in Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, stated that,

> [a]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party.

Holmes personally met with McDaniels to confirm that conversation. Holmes testified that McDaniels denied ever meeting with Monteverde, in confidence or otherwise, to discuss Monteverde's inability to complete the challenge.

[4] The parties contests the reason why Monteverde was disciplined. Montenverde contends it was because of the allegedly false statements he made during his interview. The NOFD contends Monteverde was disciplined for the incident involving the infant trauma victim. The record reveals he was disciplined for both incidents: Monteverde was reprimanded for the improper command directed at the scene with the infant trauma victim. The reprimand was affirmed by the Civil Service Peer Review Board after a hearing officer determined that letter of reprimand was appropriate. (Rec. Vol. II, at 330, 386-88) He was also suspended for six hours for the allegedly false statements; however, that decision was later overturned by the Peer Review Board and the NOFD was ordered to pay Monteverde back pay for the loss sick hours.

4

If on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

799 F.2d 218, 222 (5th Cir. 1986). Accordingly, the moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden. Celotex v. Catrett, 477 U.S. 317, 327 (1986). The moving party "need not negate the elements of the nonmovants's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996). Allegations or affidavits simply setting forth conclusory facts and conclusions of law are insufficient. Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir 1985). Thus, the nonmovant is required to show more than some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-86 (1986). He must put forth "concrete and particular facts." See Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A mere colorable claim of racial discrimination will not be enough to survive a defendant's motion for summary judgment. St. Amant v. Benoit, 806 F.2d 1294,1296 (5th Cir. 1987).

## DISCUSSION

A. Race Discrimination

5

Monteverde contends that the district court erred in determining he did not prove his race discrimination claims. There was no error.

As the district court properly noted, claims of employment discrimination brought under 42 U.S.C. §§ 1981, 1983, or 2000d are analyzed under the same evidentiary standard as claims brought under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. 2000e et seq.[5] See Lawrence v. Uni of Tex. Med Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999). Monteverde's claims will be addressed accordingly.

To prevail on a claim of race discrimination under Title VII, §1981, or § 1983, a plaintiff must first establish a prima facie showing of discrimination. To establish a prima facie case of race discrimination in a failure to promote or improper discipline case, the plaintiff must prove that: (1) he belongs to a protected group under Title VII; (2) he applied for and was qualified for the position he sought; (3) he was not promoted to the position sought; and (4) his employer promoted an employee to the position sought who was not a member of the protected class; see Manning v. Chevron Chem. Co., L.L.C., 332 F.3d 874, 881 (5th Cir. 2003); Pratt v. City Houston, Tex., 247 F.3d 601, 606 n.2 (5th Cir. 2001); Jefferies v. Harris County Cmty. Assoc., 615 F.2d 1025, 1029 (5th Cir. 1980); see also McDonnell Douglas Corp. v. Green, 411 U.S. 793 (1973); Peagram v. Honeywell, 361 F.3d 272, 281 (5th Cir. 2004); Celestine v. Petroleos de Venzuella SA, 266 F.3d 343, 354-55 (5th Cir. 2001); Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000), or, in an employment discipline case, that his employer treated non-protected employees more favorable, in similar circumstances. See Mayberry v. Bought Aircraft Co., 55 F.3d 1086, 1090 (5th

[5] Title VII states in pertinent part that, "[i]t shall be an unlawful employment practice for an employer (1) . . . to discharge any individual . . . because of such individual's race. . . ." 42 U.S. C. 2000e-2(a)

6

Cir. 1995); <u>Green v. Armstrong Rubber Co.</u>, 612 F.2d 967, 968 (5th Cir. 1980). The plaintiff bears the burden of persuading the court that he has established a prima facie showing of race discrimination. 218 F.3d at 399. Once a prima facie case is established, a presumption of discrimination arises. <u>See</u> <u>Pratt</u>, 247 F.3d at 606.

After the prima facie case has been established, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the conduct the employee challenges. <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004). As this burden is one of production, not persuasion, "the employer need not prove that it was actually motivated by its proffered reason." <u>Id</u>. Yet, if the employer meets its burden, "the presumption of discrimination created by the plaintiff's prima facie case falls away." <u>Id.</u> The burden of persuasion then shifts back to the plaintiff to demonstrate that his employer's articulated reason was merely a pretext for unlawful discrimination. <u>Id.</u> The court's factual inquiry then becomes more specific. <u>Id.</u> To avoid dismissal by summary judgment at this stage, this court has directed that,

> the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination. In other words, after a defendant employer has met its burden of production, an employee plaintiff . . . must . . . demonstrate that there is a material issue of disputed fact as to discrimination. . . . In some instances, proof of pretext alone will suffice.

<u>Id.</u> (footnotes omitted). In short, the question for us at the pretext stage is whether a rational trier of fact could find that Monteverde's employer discriminated against him on the basis of race. <u>See</u> <u>Pratt</u>. 247 F.d at 606.

### 1. First Incident: Letter of Reprimand

7

The district court rejected Monteverde's contention that the letter of reprimand he received from the NOFD was motivated by discrimination. Because Monteverde does not offer a scintilla of evidence that the discipline he received was motivated by race, we agree.

As the district court noted, Monteverde has yet to acknowledge that he was the commanding officer when he and the subordinate firefighters arrived at the accident scene involving the infant trauma victim. Monteverde gave orders that he tacitly acknowledges were contrary to the department's standard operating procedures, yet he offers the unsubstantiated claim that the NOFD did not properly train him to act in such situations. Instead of offering evidence, direct or otherwise, that the discipline he received was unwarranted or motivated by racial discrimination, he asserts that his subordinates should have defied his orders and attended to the injured victim. In addition, Monteverde claims that the NOFD should have known he missed the required medical training classes necessary for him to properly perform in similar situations. For this reason, Monteverde maintains that the NOFD should not have held him accountable for the improper command he directed to his subordinates.

Monteverde's arguments do not pass muster. There is absolutely nothing on this record suggesting that an African-American captain--in the same circumstance as Monteverde--would have been treated more favorable than Monteverde. Indeed, the record indicates that a subordinate fireman is to follow the dictates of his commanding officer until a more superior officer relieves the commanding officer of his duties. (Rec. Vol. II, at 330-33; 336-38) Moreover, Monteverde's contention that the subordinate firefighters at the scene were similarly situated to him is incorrect. Monteverde was not similarly situated with the other firefighters as they were his subordinates; the

8

record indicates that none of the other firemen were reprimanded because they properly followed orders.

### 2. Second Incident: Failure To Promote

Monteverde's argument that the NOFD discriminated against him by not promoting him is also unpersuasive.

We will assume for the sake of argument that Monteverde did indeed establish a prima facie case of discrimination. The burden of production therefore shifts to the NOFD to articulate a legitimate, non-discriminatory reason for its decision not to promote Monteverde. We accept NOFD's assertion that Woodridge was simply a better qualified candidate than Monteverde as its legitimate, non-discriminatory reason for not promoting Monteverde. Thus, the burden shifts back to Monterverde to present sufficient circumstantial evidence that the NOFD's proffered reasons were pretextual, such that a reasonable factfinder could infer that Monteverde was discriminated against on the basis of race.

As the district court noted, Monteverde proffers evidence that he received a bachelor's degree in education from the University of New Orleans in 1973; that he has continued his education and training, an affidavit from retired Deputy Fire Chief, attesting to his work performance and recommending his promotion; evidence that he is qualified for administrative responsibilities.

Even crediting all of the foregoing evidence, we find this insufficient to support a reasonable inference that the NOFD failed to promote Monteverde because it was motivated by racial animus. The NOFD asserts that it promoted Woodridge because he was the best qualified candidate. See Patrick v. Ridge, 394 F.3d 311, 319 (5th Cir. 2004) (acknowledging that "choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate,

9

nondiscriminatory reason for an adverse employment action"). Superintendent Parent testified in a sworn affidavit that,

> . . . Captain Woodridge [now District Chief] was our most experienced employee in the field of Fire Safety Public Education. He was also the officer in charge of our public information unit. Based upon his years of outstanding performance commanding the PIO [Public Information Office] and his pioneering efforts to extend the Learn Not to Burn pro gram throughout local public and parochial schools, I selected Woodridge to command a combined PIO/Human Resources Division within the New Orleans Fire Department. Woodridge was selected for promotion to District Chief to head this specialized division by use of the Civil Service Rule of three, which permits me to select the best qualified individual from a list of certified eligible candidates. Others were passed over for the promotion, including other whites and an African American.
>
> There was no other responsible choice than to promote Woodridge to head the New Division. Race played absolutely no part in promoting Woodridge over Monteverde and the others (emphasis supplied).

(Rec. Vol. II, at 357) Monteverde has failed to produce evidence sufficient to contravene the NOFD's evidence that Woodridge was simply a better qualified candidate. As already stated, conclusory allegations or unsubstantiated assertions are not enough to "satisfy the nonmovant's burden." Wallace, 80 F.3d at 1047. The evidence Monteverde proffers in the instant case simply does not establish pretext. Accordingly, this claim is without merit.

B. Retaliation

Finally, Monteverde contends that the district court erred in determining that he did not establish a prima facie case of retaliation. We disagree.

It is unlawful for an employer to discriminate against its employee for making a charge under Title VII of the Civil Rights Act. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation is demonstrated if the plaintiff establishes that: (1) he engaged in activity protected under Title VII; (2) his employer carried out conduct adverse to his employment; (3) and a causal connection exists

10

between the protected activity and the adverse employment action. <u>Jaynes v. Pennzoil Co.</u>, 207 F.3d 296, 299 (5th Cir. 2000).

The only element at issue is whether Monteverde has established that a causal connection exists between his filing of the EEOC charge, i.e., the protected activity, and the NOFD's failure to promote him to the position of chief and for issuing him the letter of reprimand. As we have already stated, the evidence establishes that Monteverde was reprimanded for directing an improper charge to a subordinate fireman, not because he was being discriminated against. We have also concluded that Monteverde failed to carry his burden sufficiently to allow for a reasonable inference that he was not promoted because of his race. To the contrary, the evidence presented to the district court and on this appeal more accurately reflect that Woodridge was selected instead of Monteverde merely because Woodridge was better qualified. Monteverde's claim of retaliation is accordingly without merit.[6]

## <u>CONCLUSION</u>

Based on the foregoing, Monteverde has not carried his burden sufficient to preclude the granting of the NOFD's motion for summary judgement. The order of final judgment by the district court dismissing Monteverde's discrimination claims with prejudice is therefore AFFIRMED.

---

[6] We have carefully reviewed Monteverde's claim that the NOFD subjected him to a racially hostile environment and his miscellaneous "privacy" claims and find them all without merit.