Opinion issued March 29, 2007

 









In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00761-CV






LUCILLE R. KELLEY, Appellant


V.


HUMBLE INDEPENDENT SCHOOL DISTRICT, Appellee






On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 2004-22881






MEMORANDUM OPINION

 Appellant, Lucille R. Kelley, appeals the trial court's order of summary
judgment in favor of appellee, Humble Independent School District. Kelley sued the
School District for age discrimination after she was fired from her job as a substitute
teacher. See Tex. Lab. Code Ann. § 21.051 (Vernon 2006). The trial court issued
an order that granted the School District's motion for summary judgment. In a single
issue, Kelley contends that the trial court's order was error because under the
applicable standard of proof, her summary judgment evidence creates a genuine issue
of material fact that precludes summary judgment. The School District responds that
Kelley failed (1) to establish a prima facie case of age discrimination, and (2) to
establish that the School District's reasons for terminating her were false or a pretext
for age discrimination. We conclude that Kelley presented a prima facie case of
discrimination, but failed to show that the School District's proffered reason for firing
her was a pretext for discrimination. We affirm.

Background

 The School District hired Kelley as a substitute teacher in 1994. Kelley's
personnel file contains occasional reports of deficient performance. Furthermore,
Kelley's record in the School District's SubFinder System reflects a low rate of
acceptance of substitute teaching assignments offered to her.

 SubFinder is an automated telephone system by which the School District
distributes substitute teaching assignments. SubFinder was active for the entire time
Kelley was an employee of the School District. SubFinder is administered by a
company that has provided substitute teacher employment services for approximately
20 years and currently services more than 50 school districts in Texas and more than
500 in the United States and Canada. The School District gives substitute teachers
a detailed instruction book to assist them with SubFinder.

 SubFinder works in one of two ways: either the system places a telephone call
to an individual substitute teacher to inform that teacher of an assignment, or the
substitute teacher calls into the system to review available assignments. The
substitute teacher can accept or reject assignments in SubFinder.

 SubFinder usually calls substitute teachers regarding assignments either from
5:30 a.m. to 11:45 a.m. or from 6:00 p.m. to 9:30 p.m. After the teacher answers,
SubFinder describes the assignment and prompts the substitute teacher to respond. 
The substitute teacher may either press "1" to accept the assignment, or "2" to reject
the assignment. Substitute teachers have the right to reject jobs, and no express
School District policy states how many jobs a substitute may reject before being
terminated. The School District evaluates its substitute teachers' availability on a
case-by-case basis.

 Substitute teachers may notify the School District of days of the week or
specific times that they are unavailable to work or to be contacted. They are also
asked to notify SubFinder of any assignments accepted directly from campus or
administrators. SubFinder does not call substitute teachers on days they are listed as
"unavailable." The School District requests that all substitute teachers keep their
contact information, availability, and grade level preferences current. Substitute
teachers can change their preferences by accessing SubFinder, by updating their
annual substitute employee information sheet, or by calling the Human Resources
Office at the School District.

 Kelley located substitute teaching assignments both through SubFinder, and
on her own by networking with teachers. Since 1999, Kelley filled out annual forms
stating that she was willing to work at all district schools and that she would teach
elementary and secondary school classes. Each annual form included a phone number
that substitute teachers could call to change personal information such as name,
phone number, and available days of the week. 

 In May 2003, the School District sent Kelley a form letter that informed her
that her employment with the School District as a substitute teacher would be
renewed for the 2003-2004 school year. On September 22, 2003, the School District
received a letter from the Texas Workforce Commission informing the School District
that Kelley had filed for unemployment benefits. In October, Dr. Mary Widmier,
Humble ISD Assistant Superintendent of Human Resources, reviewed Kelley's
SubFinder log in order to reply to this Workforce Commission notice. The School
District had previously replied to several Workforce Commission requests as a
response to Kelley filing for unemployment benefits. Customarily, when an
employee filed for unemployment benefits, the School District would review that
employee's job log to verify employment and determine whether work was available
to that employee.

 Widmier examined Kelley's SubFinder records from August 20 through
October 15, 2003. The job log showed that the system had attempted to contact her
60 times for jobs, but she had accepted only nine. (1) Kelley rejected jobs on September
11, 15, 18, and 30. School District records also indicate that Kelley called in to
review several assignments, but chose not to accept them. Additionally, there were
many times that SubFinder attempted to contact Kelley, but the phone was either not
answered or the system encountered a busy signal. 

 Widmier contacted Kelley by telephone after reviewing her acceptance data to
discuss her pattern of refusing assignments and failure to respond to SubFinder.
Widmier wanted to ascertain whether there were specific reasons for Kelley's
behavior and to determine if she wanted to continue employment with the School
District. At the time she telephoned Kelley, Widmier did not know Kelley's age. 
When Widmier explained the SubFinder data to her, Kelley became angry and refused
to answer questions. Kelley asserted that the report was inaccurate and that she had
been working, but did not detail what specific errors that she thought the report
contained. Widmier then informed Kelley that her employment would be terminated
the following week, at which point Kelley hung up. 

 On October 21, 2003, a letter was sent to Kelley with Widmier's signature
informing Kelley that she had been fired and was removed from the School District's
substitute teacher list. The letter stated,

 This letter is to inform you that I am removing your
name from employment with the Humble ISD substitute
pool effective today, October 21, 2003.


 As we discussed, a recent review of our substitute
calling records shows that you are not readily available to
work on a consistent basis. For example, since August 20,
our sub calling system has made 60 attempts to contact you
for jobs. However, you have accepted only nine (9) of the
calls placed by the calling system. You have also refused
several offers for work, including assignments on
September 15, 18, and 30. Our payroll records confirm
that you did not work for the school district on any of these
days. This pattern demonstrates that you are either not
available for work when the sub calling system attempts to
contact you or you have no further interest in working for
the school district. Therefore, I have determined that it is
in the best interest of the school district that we end your
employment with us at this time. 

 

Attached to this termination letter was Kelley's SubFinder Job Log Report from
August to October 2003. Kelley was 69 years old at the time she was fired. 

 Kelley filed suit in May 2004. In her First Amended Petition, Kelley alleges
that the School District wrongfully terminated her employment because of her age. 
The petition stated that Widmier "claimed that [Kelley] did not make herself available
for teaching assignments. This statement is false." She contended that her years of
employment with the School District showed that her "employment performance was
exemplary." She further stated that "age was a motivating factor in [the School
District's] decision to terminate her employment."

 In May 2005, the School District moved for summary judgment. The School
District based its motion on the arguments (1) that Kelley failed to establish a prima
facie case of age discrimination and, (2) that Kelley failed to establish that the School
District's reasons for terminating her were false or motivated by age discrimination. 
In her response to the School District's motion, Kelley alleged several factual issues
relating to the SubFinder data, including that: 

 she rejected only one assignment during the
September-October period reviewed by Widmier; 


 she worked 18 assignments during that period, as
opposed to the nine alleged by the School District. 
Of these 18 assignments, she stated that 16 were
full-day assignments and two were half-day
assignments;


 a number of SubFinder records showing that the
system's phone call was answered but no response
was entered indicate that her answering machine
took the call;


 School District records falsely stated she refused
work on September 11. Kelley asserted that because
it was a high school assignment, she would have
been willing to accept the job had it been offered to
her; 


 on September 15, she refused an assignment because
it was for an elementary school position; she
asserted that health problems prevented her from
working with younger students, despite her response
to the SubFinder form that she could take
assignments at all grade levels;


 on September 18, she did not receive a SubFinder
call because she was at the unemployment office;
and,


 on October 21, she accepted a substitute teaching
assignment outside the SubFinder system, and did
not reject work that day.


 The trial court granted the School District's summary judgment motion without
stating the grounds for its ruling.

Standard of Review

 We review a trial court's grant of summary judgment de novo. Little v. Tex.
Dept. of Criminal Justice, 177 S.W.3d 624, 629 (Tex. App.--Houston [1st Dist]
2005, no pet.). The summary judgment movant must prove that it is entitled to
judgment as a matter of law and that there is no genuine issue of material fact. Id.;
see also Tex. R. Civ. P. 166a(c). We take as true evidence that favors to the non-movant, and indulge every reasonable inference and resolve any doubts in favor of
the non-movant. Little, 177 S.W.3d at 629. We may affirm only when the record
shows that a movant has disproved at least one element of each of the plaintiff's
claims or has established all elements of an affirmative defense to each claim. Id.
(citing Am. Tobacco Co., v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997)). If the
movant establishes a right to summary judgment, the burden then shifts to the non-movant to present evidence raising a fact issue. Id., 177 S.W.3d at 629 (citing Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995)). When a summary
judgment order does not specify the grounds on which it was granted, we affirm the
judgment on any valid theory included in the motion. Id., 177 S.W.3d at 629-30
(citing Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995)).

Burden-Shifting Under McDonnell Douglas

 Kelley claims discrimination under the Texas Commission on Human Rights
Act, which prohibits an employer from discharging an employee because of age. 
Tex. Lab. Code Ann. § 21.051 ("An employer commits an unlawful employment
practice if because of . . . age the employer . . . discharges an individual, or
discriminates in any other manner against an individual in connection with . . .
privileges of employment."); see generally §§ 21.001-.556. In cases brought under
the Act, we follow analogous federal precedent. Quantum Chem. Corp. v. Toennies,
47 S.W.3d 473, 476 (Tex. 2001). When, as here, an employment discrimination case
has not been fully tried on the merits, we apply the burden-shifting analysis
established by the United States Supreme Court in McDonnell Douglas Corp. v.
Green. 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824-25 (1973); see also Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 2106; St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 2747 (1993);
Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003); Little, 177
S.W.3d at 630.

 In reviewing the evidence under McDonnell Douglas, we draw all reasonable
inferences in favor of the non-moving party. Reeves, 530 U.S. at 150, 120 S. Ct. at
2110. We may not make credibility determinations or weigh the evidence. Id., 120
S. Ct. at 2110. We review the record as a whole, but disregard all evidence in favor
of the moving party. Id. at 151, 120 S. Ct. at 2110.

 Under McDonnell Douglas, the plaintiff in an employment discrimination suit
must first present evidence of a prima facie case of discrimination. Reeves, 530 U.S.
at 142, 120 S. Ct. at 2106; Quantum Chemical, 47 S.W.3d at 477. "The burden of
establishing a prima facie case of [discrimination] is not onerous." Tex. Dept. of
Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981); see also
Quantum Chem., 47 S.W.3d at 477. To meet her burden to present a prima facie case,
Kelley was required to present evidence that (1) she is a member of a protected class;
(2) she suffered an adverse employment action, such as being fired; (3) she was
qualified for the position from which she was discharged; and (4) she was either
replaced by someone outside the protected class, replaced by someone younger, or
was otherwise discharged because of her age. See Russo v. Smith Int'l, Inc., 93
S.W.3d 428, 435 (Tex. App.--Houston [14th Dist.] 2002, pet. denied). 

 Once a plaintiff presents a prima facie case of discrimination, the burden shifts
to the defendant to articulate "a legitimate, nondiscriminatory reason for the adverse
employment action." Little, 177 S.W.3d at 631 (citing Reeves, 530 U.S. at 142, 120
S. Ct. at 2106). The burden is one of production only, not of persuasion. Little, 177
S.W.3d at 631 (citing Reeves 530 U.S. at 142, 120 S. Ct. at 2106; Russo, 93 S.W.3d
at 437-38).

 After the defendant proffers its nondiscriminatory rationale for the adverse
employment decision, the burden returns to the plaintiff to show "that the legitimate
reasons offered by the defendant were not its true reasons, but were a pretext for
discrimination." Reeves, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Burdine, 450
U.S. at 253, 101 S. Ct. at 1093). Kelley may attempt to prove intentional
discrimination "by showing that [the School District's] proffered explanation is
unworthy of credence." See id. (citing Burdine, 450 U.S. at 256, 101 S. Ct. at 1095). 
Under the Commission on Human Rights Act, she must "show that discrimination
was a motivating factor in an adverse employment decision." Quantum Chem., 47
S.W.3d at 482. Kelley need only produce more than a scintilla of evidence in order
to raise a fact issue for the trial court's summary judgment to be reversed. Winters
v. Chubb & Son, Inc., 132 S.W.3d 568, 576 (Tex. App.--Houston [14th Dist] 2004, 
no pet.). 

Kelley's Prima Facie Case The School District contends that Kelley has failed to meet its burden of
producing evidence of a prima facie case of discrimination, the first step in the
McDonnell Douglas analysis. Specifically, the School District asserts that Kelley has
not shown that she was replaced by a younger employee, the fourth element of her
prima facie case. (2) See Russo, 93 S.W.3d at 435. In its appellate brief, the School
District argues that no one can know which substitute teaching assignments would
have gone to Kelley, and since it continued to employ potential substitutes who are
older than Kelley, it is possible that the jobs she will not receive will all be filled by
older employees. (3)

 Kelley contends on appeal, as she did in her response to the School District's
motion for summary judgment, that the School District's own records show that she
was replaced by a younger person. The summary judgment evidence shows that all
the substitute teachers hired in the two months immediately after she was fired were
younger than she was at the time she was fired. We conclude that Kelley produced
sufficient evidence of the fourth element of a prima facie case of employment
discrimination by producing evidence that she was replaced by a younger employee. 
Because the fourth element is the only element contested by the School District,
Kelley has met her initial burden under McDonnell Douglas of establishing a prima
facie case of discrimination.

The School District's Nondiscriminatory Reason

 Because Kelley presents a prima facie case of discrimination, the School
District was required to produce a legitimate, nondiscriminatory reason for firing her
in order to meet its burden under the second step of the McDonnell Douglas analysis. 
See Burdine, 450 U.S. at 260, 101 S. Ct. at 1097. The School District proffered
Kelley's lack of availability and poor rate of acceptance of substitute teaching
assignments as evidenced by her record of responses to the SubFinder System.

 Kelley contends that the School District has failed to prove, as a matter of law,
that its proffered reason is the true reason for her termination. Specifically, she states
that the School District's rationale is not presented "with 'sufficient clarity' to afford
the employee a realistic opportunity to show that the reason is pretextual." Patrick
v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004). Kelley asserts that the School District's
statement to the trial court that she did not "consistently make herself available" is too
vague to satisfy the burden of production under step two of McDonnel Douglas. Her
reliance on Ridge, however, is misplaced. Ridge "does not mean that an employer
may not rely on subjective reasons for its personnel decisions." Id. The Ridge court
held that the employer's stated reason for not hiring an employee was impermissibly
vague because it did not provide some "articulable characteristic" which would
enable the plaintiff to show pretext. Id. The rejected stated reason was that an
employee was not "sufficiently suited" for the position. Id. Here, the School District
provides an articulable characteristic: frequency of acceptance of substitute teaching
assignments via SubFinder. This articulable characteristic was sufficient to enable
Kelley to attempt to show pretext by contesting, as she has, the accuracy of the
SubFinder records. We conclude that because the School District presented a
sufficiently specific nondiscriminatory reason for firing Kelley, it has met its burden
of production under McDonnell Douglas. See id.; see also Little, 177 S.W.3d at 631
(citing Reeves 530 U.S. at 142, 120 S. Ct. at 2106; Russo, 93 S.W.3d at 437-38).

Kelley's Proof that the School District's Reason was Pretext

 Because the School District presented a legitimate, nondiscriminatory reason
for firing Kelley, the burden therefore shifts back to Kelley to show that the School
District's proffered reason is false, and a pretext for discrimination because of her
age. See Reeves, 530 U.S. at 143, 120 S. Ct. at 2106; Quantum Chem., 47 S.W.3d at
477. She articulates a number of factual bases that she claims show pretext. 

A. No fact issue regarding the School District's motivation

 Kelley contends that the School District's assertion that she was consistently
unavailable for substitute teaching assignments is demonstrated to be false by the
summary judgment evidence. She states that the evidence shows that:

 during the final two months of the 2002-2003 school
year, she worked 22 assignments and rejected 24 (a
total of 46 assignments offered);


 she was kept on for the 2003-2004 school year,
indicating that accepting 22 assignments out of
46--as she did over the final two months of the
2002-2003 school year--is a sufficiently consistent
acceptance rate;


 over the two months immediately prior to her firing
in October 2003, she worked 18 assignments, and
testified that she rejected only one, far better than
her ratio of acceptance to rejection that she compiled
over the final two months of the 2002-2003 school
year;


 Texas Workforce Commission records created by
the School District state that Kelley accepted
"numerous" assignments in April and May 2003;
and


 Kelley was never listed as "inactive" by the School
District, where "inactive" substitutes were those
who accepted no assignments over a 60-day period.


This evidence, Kelley asserts, "clearly casts doubt on and tends to show that [the
School District's] 'consistency' argument is pretextual."

 "An at-will employer does not incur liability for carelessly forming its reasons
for termination." Wal-Mart Stores, 121 S.W.3d at 740. (4) We do not ask whether the
SubFinder records were a pretext, "but what they were a pretext for." Id. (emphasis
in original). In addition, "even an incorrect belief that an employee's performance
is inadequate constitutes a legitimate, non-discriminatory reason." Little v. Republic
Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991). Finally, the Supreme Court in Reeves stated
that 

Whether judgment as a matter of law is appropriate in any
particular case will depend on a number of factors. These
include the strength of the plaintiff's prima facie case, the
probative value of the proof that the employer's
explanation is false, and any other evidence that supports
the employer's case and that properly may be considered
on a motion for judgment as a matter of law.Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109. 

 None of the evidence to which Kelley points tends to show that the School
District had a discriminatory motive for firing her. Kelley's claim that she rejected
24 assignments and worked 22 assignments over the final two months of the
2002-2003 school year supports the School District's claim that she was not
available, because it shows that she was not available more often than she was
available. This evidence is thus no proof of pretext by the School District. Further,
the fact that the School District never listed her as "inactive" does not show that she
should not have been terminated due to her inadequate availability. The School
District presented records of four other "active" substitutes who were fired because
of poor SubFinder records. Finally, her contention that she worked more assignments
than SubFinder reported, and that she refused fewer assignments, tends only to show
that the School District may have been careless, or may have incorrectly formed its
belief that she was insufficiently available. See Wal-Mart Stores, 121 S.W.3d at 740;
Little, 924 F.2d at 97. None of her summary judgment evidence casts doubt on the
School District's contention that its motive for firing her was the SubFinder data
showing that she too infrequently accepted SubFinder assignments. 

B. Records of other substitutes' firings

 Kelley asserts that a comparison of her record with the records of four other
substitutes who were fired near the time she was fired shows disparate treatment. See,
e.g., Hazen Paper Co. v. Biggins, 507 U.S. 604, 609-10, 113 S. Ct. 1701, 1706
(1993). To establish that she suffered disparate treatment by comparing her treatment
with other substitutes, Kelley must "demonstrate that . . . preferential treatment was
given under 'nearly identical' circumstances; more specifically, [she] must show that
[s]he was discharged for conduct that other employees were not." Winters, 132
S.W.3d at 578. Kelley makes no allegations and presents no evidence of any
younger substitute teachers who had patterns of unavailability similar to her own, but
whom the School District did not fire; that is, she does not claim that she was fired
for conduct for which other, younger employees were not fired. 

 Instead, Kelley points to the School District's summary judgment evidence of
other substitute teachers who were fired based on SubFinder records, and claims that
these other fired substitutes were in nearly identical circumstances but received
preferential treatment. Specifically, she points to a substitute who received a warning
before she was terminated, and to substitutes who were fired based on three months
of poor availability as opposed to the two months of records on which the School
District based Kelley's firing. These records are not evidence of disparate treatment. 
The substitute who received a warning was fired because she cancelled too many jobs
that she had already accepted, not for a general pattern of unavailability. Kelley's
circumstances are therefore not "nearly identical" to this substitute. See Ysleta Ind.
Sch. Dist. v. Monarrez 177 S.W.3d 915, 918 (Tex. 2005) (fired employees who
violated time card rules not similarly situated to employees who violated time card
rules but kept their jobs, where "nature and degree" of violations is different). 
Further, the letters of termination in the appellate record do not indicate that other
employees were allowed three months of poor performance before they were fired as
opposed to Kelley's two months. Instead, the letters show that all of the firings,
including Kelley's, were based on "a recent review" of SubFinder records. That two
months of Kelley's SubFinder records were reviewed instead of three is not relevant
to our inquiry on summary judgment, since absent a showing of discriminatory
motive, "a disagreement between an employer and employee over assessment of job
performance is not actionable." Winters, 132 S.W.3d at 578. 

C. Statistical evidence

 Kelley correctly states that a plaintiff may show pretext by pointing to statistics
that illustrate a discriminatory employment policy. See McDonnell Douglas, 411 U.S.
at 805, 93 S. Ct. at 1825 ("statistics as to petitioner's employment policy and practice
may be helpful to a determination of whether petitioner's refusal to rehire respondent
in this case conformed to a general pattern of discrimination"). However, the
statistics Kelley presents are insufficient as a matter of law to show a general pattern
of discrimination. Kelley points out that in 2003 and 2004, the School District fired
2 substitute teachers born in the 1920s, 34 born in the 1930s, and 119 born in the
1940s. She does not, however, link this raw data in any way to a pattern of
discrimination. These plain numbers, without more, are insufficient to raise a fact
issue as to pretext. See, e.g., Int'l Brotherhood. of Teamsters v. U.S., 431 U.S. 324,
337-38, 97 S. Ct. 1843, 1855-56 (1977) (presenting and comparing percentages of
employees assigned to particular jobs to show pattern of racial discrimination);
E.E.O.C. v. Olson's Dairy Queens, Inc., 989 F.2d 165, 166-68 (5th Cir. 1993)
(percentages and "standard statistical techniques" used to show racial discrimination).

 We conclude that Kelley presented no evidence meeting her burden under the
third McDonnell Douglas step to show that the School District's proffered reason for
firing her was a pretext for discrimination. See Reeves, 530 U.S. at 134, 142-43, 120
S. Ct. at 2101-02, 2106. Kelley has also failed to produce more than a scintilla of
evidence that discrimination was a motivating factor in the School District's decision. 
See Quantum Chem., 47 S.W.3d at 481. We hold that the trial court did not err by
rendering summary judgment in favor of the School District. We overrule Kelley's
sole point of error.

 Conclusion


 We affirm the judgment of the trial court.






 Elsa Alcala

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


1. There are discrepancies in the record as to whether Kelley accepted 9 or 10 jobs
through SubFinder.
2. The School District does not contest the other three elements of Kelley's prima facie
case.
3. In its motion for summary judgment, the School District states that 


Following the Plaintiff's termination on October 21, 2003,
Humble ISD hired approximately 80 substitute teachers. Like
the Plaintiff, all of these substitutes were added to Humble
ISD's general substitute pool and were assigned the title,
"substitute teacher." . . . It is impossible to determine which of
the 80 substitutes Humble ISD hired after the Plaintiff's
termination, if any, actually "replaced" the Plaintiff. Therefore,
the Plaintiff cannot establish that she was replaced by someone
younger or outside of her protected as category--the fourth
element of her prima facie case.
4. Wal-Mart Stores, Inc. v. Canchola considers a challenge to the legal sufficiency of
evidence to support a jury verdict, and not a summary judgment motion as we have
here. 121 S.W.3d 735, 737 (Tex. 2003). However, the standard is the same for our
reviews of evidence under both a summary judgment and a legal sufficiency
challenge. City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005).