IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-11235
Summary Calendar

ANTHONY TODD JOSEPH

Plaintiff - Appellant

V.

THE CITY OF DALLAS; THE CITY OF DALLAS POLICE DEPARTMENT;
DAVID KUNKEL, Dallas Chief of Police; LIEUTENANT CRAIG MILLER,
Dallas Police Officer, Badge Number 4653; DETECTIVE NICHOLAS
WINGO, Dallas Police Officer, Badge Number 6645; DETECTIVE STACY
WARD, Dallas Police Officer, Badge Number 5302

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas, Dallas
No. 3:06-CV-1563

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Anthony Todd Joseph appeals the district court's
summary judgment dismissing his discrimination claim under the Age
Discrimination in Employment Act. Because we agree with the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that defendants-appellees offered a legitimate, nondiscriminatory reason for not hiring Joseph, and Joseph did not provide sufficient evidence of pretext, we affirm.

## I. BACKGROUND

In the spring of 2006, when Anthony Todd Joseph was forty-nine years old, he attended a job fair at which he met a recruiting team from the Dallas Police Department (the "DPD"). Joseph told the recruiters his age and asked if it would be an impediment if he applied to become an officer. The recruiters assured him that there was no age requirement and encouraged him to apply. Excited by the prospect, Joseph applied.

Joseph passed the first five of twelve steps in the DPD application process, including a preliminary interview, a civil service test, a physical fitness test, a pre-polygraph examination, and a polygraph examination. On May 26, 2006, Joseph participated in the sixth step, an interview by three officers comprising the so-called Applicant Interview Board (the "AIB"). The AIB interview was conducted by DPD Officers Craig Miller, Nicholas Wingo, and Stacy Ward. Joseph was asked to complete a number of tasks, including writing two essays, and memorizing and repeating police procedures. In addition, Joseph was asked to orally explain how he would respond to hypothetical police scenarios, namely: (1) a hit-and-run auto accident; (2) an ambush while patrolling; and (3) a hostage situation involving a rape victim. To assist him with the hypothetical scenarios, he was provided with instructions and police protocols. This portion of the AIB interview was intended to be stressful and intense. Indeed, Joseph described his interview as "fairly intense," with panel members "trying to rattle and hurry [him]."

Each AIB member individually evaluated Joseph on the following criteria: (1) ability to follow directions; (2) adaptability/flexibility; (3) decision making/situational reasoning ability; (4) reaction to pressure; (5) interpersonal

skills; (6) appearance/bearing; (7) oral communication skills; and (8) writing skills. Officers Miller, Wingo and Ward scored Joseph on each criteria on a scale of 1.00 to 5.00. Scores of 3.00 and above were passing. A candidate's final, overall AIB score was calculated by averaging all twenty-four scores.

Collectively, Officers Miller, Wingo, and Ward gave Joseph a failing score of 2.74. Joseph received an overall passing score of 3.00 from Officer Miller. However, Officers Wingo and Ward both gave Joseph an overall failing score of 2.62. All three officers gave Joseph passing scores for "appearance/bearing." However, all three failed Joseph in the "adaptability/flexibility" category and Officers Wingo and Ward failed Joseph in the "decision making/substantial reasoning ability" category. On Joseph's AIB interview form signed by all of the officers, the officers noted that Joseph was "unable to logically process information."

After each panel member's scores were calculated, Joseph was informed that he had failed the AIB examination and that he would not be allowed to continue in the hiring process. The AIB members discussed with Joseph the reasons for his failure and gave him an opportunity to ask questions. The following day, on May 25, 2006, Joseph sent an email to the recruiting section of the DPD. In his email, Joseph acknowledged that he had made mistakes in his responses to the hypothetical police scenarios. He also asked for guidance as to the proper answers so that he could improve in future interviews. The DPD never responded.

On August 29, 2006, Joseph filed a three-count complaint against the City of Dallas (the "City"), the DPD, David Kunkel, the Dallas Chief of Police, and Officers Miller, Wingo, and Ward. Joseph claimed that the DPD failed to hire him as a result of his age and brought claims under: (1) the Age Discrimination in Employment Act ("ADEA"); (2) Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) 42 U.S.C. § 1983. On February 27, 2007, the defendants moved for

summary judgment. Because one of the grounds for the motion was the individual defendants' qualified immunity defense, the defendants triggered a provision in the district court's scheduling order automatically staying discovery, except with respect to qualified immunity issues.

On November 6, 2007, the district court granted the defendants summary judgment on all of Joseph's claims. The district court held that Joseph could not recover for age discrimination: (1) under Title VII because Title VII does not provide a cause of action for age discrimination; (2) under 42 U.S.C. § 1983 because the ADEA preempts § 1983 age discrimination claims; (3) against the individual defendants because the ADEA does not allow claims against supervisory employees in their individual capacities; or (4) against the DPD because the DPD is not a legal entity amenable to suit. In addition, the district court held that Joseph could not recover for age discrimination against the City because, even assuming Joseph could make out a prima facie case of discrimination, the City stated a legitimate, nondiscriminatory reason for its decision—Joseph's alleged poor responses to the hypothetical police scenarios and his inability to logically process information—and Joseph failed to offer sufficient evidence that the reason was pretextual.

On November 29, 2007, Joseph filed a timely appeal. Joseph argues that the district court's order in favor of the City was in error because: (1) the City did not provide a legitimate, nondiscriminatory basis for failing him; and (2) he presented sufficient evidence to establish that the City's putative reason for failing him was a mere pretext for discriminatory animus. Joseph does not take issue with the remainder of the district court's specific holdings. However, Joseph contends that the district court's order should be set aside because he was unable to conduct discovery as a result of the automatic stay imposed by the district court's scheduling order.

## II. DISCUSSION

### A.

We review a grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000) (citations omitted). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The ADEA makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). A plaintiff may prove age discrimination through either direct or circumstantial evidence. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002) (citation omitted). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Id. at 897 (citation omitted); see also Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003) (citation omitted) ("To qualify as direct evidence, a document must be (1) age related, (2) proximate in time to the termination, (3) made by an individual with authority over the termination, and (4) related to the employment decision."). Here, however, Joseph does not appear to argue that he has direct evidence of discrimination. Nor do we believe that any of the evidence he offered indicates discriminatory intent without inference or presumption.

When a plaintiff relies only on circumstantial evidence of age discrimination to prove his case, courts apply the three-part McDonnell Douglas burden-shifting framework. Patrick v. Ridge, 394 F.3d 311, 315 n.10 (5th Cir. 2004) (citation omitted). First, the plaintiff must establish a prime facie case of

discrimination. Id. (citations omitted). To establish a prima facie case for discriminatory failure to hire under the ADEA, the plaintiff must show that (1) he was over the age of forty at the time he was not selected; (2) he was qualified for the position he sought; (3) he was not selected; and (4) either (a) a candidate outside his protected class was hired, (b) someone younger was hired, or (c) he was otherwise not selected because of his age. See McClaren v. Morrison Mgmt. Specialists, Inc., 420 F.3d 457, 462 (5th Cir. 2005) (citations omitted) (setting forth the elements for discriminatory failure to hire under the substantively identical Texas Commission on Human Rights Act); see also Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted) (setting forth a prima facie case under the ADEA for discriminatory discharge). If the requirements for a prima facie case of discrimination are established, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. Patrick, 394 F.3d at 315 (citation omitted).

To rebut the presumption of discrimination created by the plaintiff's prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for its decision not to hire. See id. (citation omitted). The employer bears only the burden of production at this stage and, therefore, it "need not prove that it was actually motivated by its proffered reason." Id. (citation omitted); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993) ("The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."). Thus, courts must avoid making any "credibility determinations at this stage because 'the burden-of-production determination necessarily precedes the credibility-assessment stage.'" Bodenheimer, 5 F.3d at 958 (emphasis in the original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Finally, if the employer meets its burden of production, "the presumption of discrimination created by the prima facie case disappears, and the plaintiff is

left with the ultimate burden of proving discrimination." Sandstad, 309 F.3d at 897 (citing St. Mary's Honor Ctr., 509 U.S. at 511-12). To survive summary judgment, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative.)." Berquist, 500 F.3d at 356 (citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

In the instant case, the parties dispute whether Joseph presented adequate summary judgment evidence to establish a prima facie case of discrimination. But as the district court also stated in its well-reasoned opinion, we need not consider this issue because the City articulated a legitimate, nondiscriminatory basis for the decision and Joseph has not shown that it was a pretext for discrimination.[1] See Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001) ("[W]e need not address the issue whether the district court erred in finding that [the plaintiff] had not satisfied the prima facie showings for discrimination . . . because even if she had . . . we find that [the plaintiff] has produced no substantial evidence to support her contention that the [defendant's] legitimate nondiscriminatory justification for her demotion was, in fact, a pretext for racial or age discrimination.").

The City offers as a legitimate, nondiscriminatory reason for its decision not to hire Joseph his failing scores from his AIB interview. More specifically, the City contends that Joseph gave poor answers to the hypothetical police scenarios and seemed unable to logically process information. Joseph argues in response that the City's proffered explanation was not a sufficiently "clear and

---

[1] Nor does Joseph attempt to prove that the City's legitimate, nondiscriminatory reason for not hiring him was only one of the reasons for its decision.

reasonably specific" explanation of its decision under Alvarado v. Tex. Rangers, 492 F.3d 605 (5th Cir. 2007).[2]

In Alvarado, the defendant attempted to justify its decision not to hire the plaintiff by noting that the scores the plaintiff received from a panel assessing her interview performance were lower than the scores received by the applicants actually hired. Id. at 616-17. The court rejected this basis as inadequate because the defendants offered neither an explanation of the scores nor evidence of how or why the interviewers arrived at the scores. Id. at 617. The court recognized that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." Id. at 616 (citation omitted). But it held that "[s]uch a reason will satisfy the employer's burden of production . . . only if the employer articulates a clear and reasonably specific basis for its subjective assessment." Id. (citation omitted). Without some indication of the factual basis or specific reasons for the plaintiff's interview score, "the score [said] nothing about whether her non-selection for the Rangers was the product of sex discrimination." Id. Indeed, the plaintiff's score was "at least as consistent with discriminatory intent as it [was] with nondiscriminatory intent because [the plaintiff] may well have received the relatively low interview score on account of her sex." Id. (citation and internal quotations omitted).

We agree with the district court that the City satisfied the criteria set forth in Alvarado because it provided a "clear and reasonably specific basis for

---

[2] Joseph also argues that the City did not articulate a legitimate, nondiscriminatory reason because: (1) the AIB members' opinion lacked credibility; and (2) Officer Miller contradicted his individual passing score by signing the final AIB Evaluation Summary, wherein it was recorded that Joseph lacked the ability to logically process information. These arguments fail, however, because the City only bears the burden of production at this stage and we do not make any credibility determinations. See Bodenheimer, 5 F.3d at 958 (citation omitted).

its subjective assessment," namely that Joseph provided poor answers to the hypothetical police scenarios and seemed unable to logically process information. This is simply not a case where the defendant relies on nothing more than a unexplained interview score that might be consistent with discriminatory intent. Indeed, whereas in Alvarado the defendant did not provide the court with interview comments or notes, the City submitted the evaluation form from Joseph's AIB interview, which stated that Joseph's interview performance was unacceptable because he was "unable to logically process information." In addition, Officers Wingo and Ward provided affidavits explaining why they gave Joseph failing scores. Officer Wingo stated that he "felt Mr. Joseph gave poor answers to the police scenarios and demonstrated an inability to logically process information." Similarly, Officer Ward stated that she "gave Mr. Joseph the tools necessary to analyze the police scenarios and provide logical answers to them. He did not do so."

Moreover, we agree with the district court that Joseph failed to offer sufficient evidence to create a genuine issue of material fact that the City's stated reason for not hiring him was a mere pretext for discrimination. See Berquist, 500 F.3d at 356 (citation omitted). In order to demonstrate pretext, Joseph introduced evidence that: (1) Officer Miller made comments about his age during the AIB interview; and (2) between August 2005 and August 2006 applicants to the DPD over the age of forty were hired at a lower rate than applicants under forty. In addition, Joseph provided the opinion of an "expert" that he should have received a higher score for his "appearance/bearing" during the interview, and his own opinion that he was qualified for the position and performed well during the interview process. We shall discuss each point separately.

First, we recognize that there is a dispute over whether Officer Miller made age-based comments during the AIB interview. Joseph stated that when

he was responding to the AIB's third hypothetical scenario—a scenario during which a kidnapper is holding a gun to a rape victim's head—Officer Miller screamed at him: "Come on, what's your forty-nine year old ass gonna do now?" and "Come on Mr. forty-niner, whats you gonna do?" Also, at another point, Joseph claims that Officer Miller asked whether at any time in his forty-nine years Joseph had the opportunity to participate in a "ride along" with a police officer. By contrast, Officers Miller, Wingo, and Ward all deny that Officer Miller made any age-based comments.

Nevertheless, the dispute does not concern a material issue of fact. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 405 (5th Cir. 1999) (holding that although there was a dispute of fact as to whether the plaintiff performed badly or was to blame for disputes with fellow employees, summary judgment was appropriate because the remaining evidence of discrimination was too speculative). As the district court noted, Joseph's own affidavit places some of the alleged comments in a context such that they could be interpreted as nondiscriminatory statements intended to "rattle and hurry" Joseph during the interview. See Berquist, 500 F.3d at 352 ("Based on [the plaintiff's] personal impression of the statement, we decline to characterize this comment as anything more than a comment unrelated to an unlawful discriminatory animus."). To illustrate, Joseph also alleged that during the second scenario Officer Miller yelled at him to "[c]ome on, what are you going to do, come on, come on[,]" and them mocked him by stating that "[o]h, we have a lawyer here, oh Mr. Lawyer, Mr. Paralegal . . . ." More importantly, however, it is undisputed that Officer Miller gave Joseph a passing score. As such, even if true, there is no evidence that Officer Miller's comments were "related to" the City's decision not to hire Joseph. See Manning v. Chevron Chem. Co., 332 F.3d 874, 882 (5th Cir. 2003) (citation omitted).

Second, Joseph's statistical evidence—between August 2005 and August 2006 applicants to the DPD over the age of forty were hired at a lower rate than younger applicants—does not create a genuine issue of material fact because it lacks any factual link to Joseph. In Walther v. Lone Star Gas Co., 977 F.2d 161, 162 (5th Cir. 1992) (citation omitted) (emphasis added), this court explained that:

> gross statistical disparities . . . may be probative of discriminatory intent, motive or purpose. Such statistics might in an unusual case provide adequate circumstantial evidence that an individual employee was discharged as part of a larger pattern of layoffs targeting older employees. This is not to say that such statistics are enough to rebut a valid, nondiscriminatory reason for discharging a particular employee. Generally, they are not. . . . [P]roof of pretext, hence of discriminatory intent, by statistics alone would be a challenging endeavor.

Elsewhere, we found that a statistical analysis that did not purport to analyze the facts surrounding the circumstances of the individual at issue was "impotent" to establish whether an employer's stated reasons were pretextual. EEOC v. Tex. Instruments Inc., 100 F.3d 1173, 1185 (5th Cir. 1996).

Here, Joseph has merely provided raw numbers. He has not shown that these numbers can only be explained by discriminatory animus because he has not purported to control for factors such as the applicants' ability to pass the physical fitness examination, the applicants' qualifications, or any other potential variable. Nor has Joseph sought to demonstrate how these statistics apply to his individual case. See Sandstad, 309 F.3d at 900 (holding that, even if the court could infer age-based animus, the plaintiff could not link that general animus to his own termination). Indeed, Joseph's statistics demonstrate that applicants over the age of forty were hired by the City. Compare Keelan v. Majesco Software, Inc., 407 F.3d 332, 345-46 (5th Cir. 2005) (citation omitted)

11

("Being a majority Indian company did not prevent [the defendant] from also firing Indians for nonperformance in sales."). As such, the statistics do not establish pretext in Joseph's specific case.

Finally, the opinions of Joseph and his expert do not create a genuine issue of fact. Joseph's expert opined, based on photographs of Joseph and other applicants on the day of their interviews, that Joseph deserved the highest score possible for his "appearance/bearing" because he was dressed more professionally than applicants receiving high scores. Joseph himself, meanwhile, stated that he performed very well during the AIB interview and that the AIB members were mistaken about his alleged inability to logically process information. Whether true or not, neither subjective opinion can defeat the imposition of summary judgment precisely because it is a subjective opinion. See Evans, 246 F.3d at 355 (citation omitted) ("Thus, [the plaintiff] cannot survive summary judgment merely because she disagrees with the [defendant's] characterization of her disciplinary history . . . ."); Shackelford, 190 F.3d at 408 (citation omitted) (holding that a plaintiff may not survive summary judgment merely by disputing the defendant's assessment of his performance); Wright v. W. Elec. Co., 664 F.2d 959, 965 (5th Cir. 1981) (holding that an unsuccessful applicant could not create a fact issue by personally disagreeing with an interviewer's assessment of his performance). "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from those decisions which are unlawfully motivated." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) (citation omitted).

## B.

If a party cannot adequately defend a motion for summary judgment because he has not had sufficient time to conduct discovery, he must move for a continuance under Rule 56(f) of the Federal Rules of Civil Procedure. Potter v. Delta Air Lines, Inc., 98 F.3d 881, 887 (5th Cir. 1996). If a district court

precludes further discovery before granting summary judgment, we review its decision for an abuse of discretion. Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir. 1993) (citations omitted). "If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion." Id. (citations omitted).

Here, Joseph argues that the district court should not have granted summary judgment because he stated in his response to the defendants' motion for summary judgment that he "has had no time to conduct discovery other than for qualified immunity per the scheduling order." The City responds that the entire issue is waived because Joseph filed neither a motion under Rule 56(f) nor an affidavit stating why discovery had not been completed, what further discovery was proposed, and how that discovery would enable the nonmovant to oppose summary judgment. See id. at 1403 n.5 (citation omitted). Moreover, the City stresses that the case was pending for six months before the automatic stay of discovery was imposed, and that during this time Joseph propounded interrogatories and requests for production on the defendants.

We are not generally inclined to impose a literal interpretation of Rule 56(f) upon pro se litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that pleadings filed by pro se litigants are to be held to less stringent standards than pleadings filed by lawyers); Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266-67 (5th Cir. 1991) (noting that courts are willing to accept something less than a formal Rule 56(f) request from litigants). However, at a minimum, a party must show: (1) why he needs additional discovery; and (2) how that discovery would create a fact issue that would defeat summary judgment. See Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 535 (5th Cir. 1999) (citation omitted). Joseph did not do so below. See Potter, 98 F.3d at

887 ("Some discovery was permitted.  If [the plaintiff] needed more discovery in order to defeat summary judgment, it was up to her to move for a continuance pursuant to rule 56(f).").  Moreover, it does not reasonably appear that further discovery would produce evidence creating a genuine issue of material fact.  See Resolution Trust Corp., 992 F.2d at 1401.  Thus, the district court did not abuse its discretion.

## III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.