# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2015

Lyle W. Cayce
Clerk

No. 14-51176

DIANA PALACIOS,

Plaintiff–Appellant,

v.

CITY OF CRYSTAL CITY, TEXAS; MAYOR RICARDO S. LOPEZ; COUNCILMAN RICHARD DIAZ; COUNCILMAN JOSE SENDEJO,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:11-CV-53

Before DAVIS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Following the 2009 election season and a change in control of the city council of the City of Crystal City, the city council terminated Diana Palacios as city manager and replaced her with a younger male, Alfredo Gallegos. Palacios sued alleging, as relevant here, sex and age discrimination. The district court granted summary judgment for the city because Palacios failed to create a genuine issue of material fact as to whether the city's proffered

---

* Pursuant to Fifth Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Cir. R. 47.5.4.

No. 14-51176

legitimate, non-discriminatory reasons for her termination were pretextual. Because Palacios has not created a genuine issue of material fact as to whether the city's reasons for her termination were pretextual, we AFFIRM the district court's grant of summary judgment.

## I.

In June 2003, the city council of the City of Crystal City, Texas hired Diana Palacios as city manager. The city councilmembers who voted to hire Palacios included Ricardo Lopez, who is now the mayor of the city and a defendant in this case. Palacios served as city manager until June 2009, when she was terminated by a majority vote of the city council. She was fifty-seven years old. She was temporarily replaced by interim city manager John Camarillo. The city then advertised to permanently fill the city manager position. The city council interviewed applicants and hired Alfredo Gallegos as the new city manager in August 2009.

Prior to the 2009 election cycle, the city council was composed of Councilman (now Mayor) Lopez, Councilman Victor Bonilla III, Councilman Ray Espinosa, Councilman Guillermo Santos Jr., and Mayor Benito Perez. Preceding the 2009 election, according to the city councilmembers' deposition testimony, they became concerned about several mismanagement and financial issues, including the city hiding its police cars to protect them from repossession and experiencing a blackout because it failed to pay its electric bill. During this time, Palacios also was personally the subject of negative media attention.

Richard Diaz and Jose Sendejo, city residents, stated in their depositions that they specifically became concerned with potential mismanagement and the negative media attention generated by Palacios. Both men decided to run for city council on a platform of changing the city administration, including Palacios. Sendejo testified that he decided to run for city council because he

wanted to "help out and make a difference" and because people in the community urged him to run. During Sendejo's deposition the following exchange took place:

Q.    And you – what prompted you to run?

A.    A lot of it was the community telling me – you know, once I announced that I was looking into, you know, running for councilman, a lot of people approached me. You know, yes, we need a change, you know, and we need some more younger people or different people to go in there and try to make better decisions.

Q.    Okay. What – and did you – is that basically what your platform was based upon?

A.    Yes. Wanted to help out and see if I could make a difference.

Later in the deposition, Palacios's attorney asked Sendejo the following question: "you mentioned that others had come to you and said they, I guess, wanted new blood . . . younger blood in the City administration, correct?" Sendejo responded that this was correct. Palacios's attorney was the only person to use the phrase "younger blood."

Diaz and Sendejo both won seats on the city council. Shortly after joining the city council, Diaz requested that Palacios put an item on the agenda of the next city council meeting regarding her continued employment. Diaz also drafted a preliminary resolution for Palacios's removal. The resolution listed grounds for termination as: (1) that the council lost confidence in the ability of the city manager to manage the city according to generally accepted management principles; (2) that the city manager knowingly failed to comply with the collateral agreement on a loan with the Zavala Country Bank, which

No. 14-51176

exposed the city to risk as a borrower; and (3) that the city manager mismanaged the sales taxes approved by the voters that were designed for street repairs. Mayor Perez refused to allow the resolution to go forward. Councilman Lopez then moved to terminate Palacios's employment due to a "lack of confidence." Sendejo, Lopez, and Diaz, a majority of the city council, voted in support of the motion to terminate Palacios.

Following Palacios's termination, the city council temporarily replaced her with interim city manager John Camarillo, a male approximately her same age. The city council then advertised the city manager position in the local newspaper. The position announcement listed several ways that an applicant could demonstrate that he or she was qualified, including specified combinations of education and experience or "any equivalent combination of experience and training which provides the required knowledge, skills, and abilities." The required knowledge, skills, and abilities were specifically identified in the announcement and generally included management ability, interpersonal skills, knowledge of budgets, communication skills, data analysis, and the ability to prioritize and implement city policies.

Several people applied for the position, including Alfredo Gallegos and a female applicant. The female applicant had one year's experience as a city manager during which she worked for two different cities. Her academic credentials were not specified. Gallegos had a bachelor's degree in business administration in accounting, but no experience in public administration. According to Lopez, Diaz, and Sendejo, the city council elected not to hire the female applicant because it learned during the interview that she had difficulty getting along with the city council in the cities where she had previously served as city manager, and that she had been terminated from her previous employment as city manager. The city council hired Gallegos.

No. 14-51176

Palacios sued in Texas state court alleging breach of contract and violations of the Texas Open Meetings Act, and seeking a writ of mandamus and declaratory relief. The city asserted an immunity-based defense that was denied by the trial court, and the city appealed. While that appeal was pending, Palacios sued the city in the federal district court, alleging age and sex discrimination. Texas's Fourth Court of Appeals subsequently dismissed Palacios's breach of contract claim and remanded her other claims to the state trial court, where Palacios added federal constitutional claims. The city then removed the case to federal court, and both cases were consolidated. The district court granted summary judgment for the city on all claims and Palacios now appeals only the grant of summary judgment as to her age and sex discrimination claims.

## II.

We review the grant of summary judgment *de novo*. *LeMaire v. La. Dep't of Trans. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). "Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* at 387 (alteration in original) (internal quotation marks omitted).

## A.

The Age Discrimination in Employment Act (ADEA) "prohibit[s] employers from discharging or otherwise discriminating against any individual because of his or her age." *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013); *see* 29 U.S.C. § 621. Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 20 U.S.C. § 623(a)(1); *accord Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). To establish

5

a claim under the ADEA, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). A plaintiff may prove her case by either direct or circumstantial evidence. *Id.* "If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).

A plaintiff relying on circumstantial evidence must prove her claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). She must "put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist*, 500 F.3d at 349. If the employer provides a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to prove that "the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, [s]he was terminated because of h[er] age." *Miller*, 716 F.3d at 144. At the summary judgment stage, "the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether this reason was pretextual. A plaintiff may show [a genuine issue of material fact regarding] pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir. 2010) (alterations omitted) (internal citations and quotation marks omitted).

No. 14-51176

The district court assumed *arguendo* that Palacios had made out a *prima facie* case of age discrimination and only addressed Palacios's failure to create a genuine issue of material fact regarding pretext.  As a legitimate, non-discriminatory reason for termination, the city offered evidence that the city council was dissatisfied with Palacios's job performance and lacked confidence in her ability to manage the city going forward.  The burden on the city is one of production, not persuasion, and to meet that burden the city need only produce evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (internal quotation marks omitted).  Poor job performance is a legitimate, nondiscriminatory reason for termination. *LeMaire*, 480 F.3d at 391.

The city produced evidence that Palacios was terminated for poor job performance.  Councilmembers Lopez, Sendejo, and Diaz each testified in their depositions that they were dissatisfied with her performance.   Specifically, Lopez testified that he had concerns about the city's failure to pay its electric bill, failure to demolish burnt-down houses, and failure to timely comply with the terms of a bank loan.  Lopez also testified that he had expressed to Palacios at various points during her tenure as city manager that he was dissatisfied with her job performance in certain areas.  This is reflected in Palacios's 2006 performance evaluation.  Lopez gave Palacios an overall rating of satisfactory, but also included a number of comments about his concerns with Palacios's performance, including concerns about the city's ability to cover its payroll, Palacios's failure to respond to city councilmembers' requests in a timely fashion, and failure to properly monitor the city's economic development officer.

In Palacios's 2008 performance evaluation, she again received an average score of satisfactory, but received *below* satisfactory scores from at

least one of the five city councilmembers in each of the following areas: budget, financial analysis, strategic planning, supervision, personnel, leadership, integrity, council relations, agenda management, policy and administration, community reputation, citizen's relations, intergovernmental relations, and economic development. Lopez again included many comments about issues with Palacios's performance.

In his deposition, Diaz testified that he ran for city council because he had been concerned about the quality of the city's management, the city's treatment of particular bonds, the city's failure to pay for its police cars, the power outage, and Palacios's treatment of an escrow fund that was slated to pay off a specific loan. Diaz's campaign also explicitly criticized Palacios's treatment of a bond issue and accused her of "misleading the city council and the community." Sendejo also testified that he was concerned about the budget and the city's management. He stated that he became aware of the problems with the city's management prior to taking office by reading the newspaper.

In the face of the city's evidence of a legitimate, non-discriminatory reason for her termination, Palacios argues that the city's reason is pretextual because: (1) the city council's cited reason of "lack of confidence" is legally insufficient because it is too vague; (2) Diaz and Sendejo could not have formed an opinion about Palacios's performance because they were on the city council for only 29 days prior to her termination; (3) the city council failed to follow its own procedures for termination; (4) Gallegos was so unqualified and inexperienced that his hiring is evidence of pretext; and (5) Sendejo made specific statements indicating that he wanted a younger city manager. We address each of these in turn.

First, Palacios contends that a stated reason for an adverse employment action must be sufficiently specific in order to constitute a legitimate, non-discriminatory reason. *See Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004). In

*Patrick*, we held that the statement that a plaintiff was "not sufficiently suited" for a position was not specific enough to constitute a "legitimate, non-discriminatory reason." 394 F.3d at 316–17. "[J]ustifying an adverse employment decision by offering a content-less and nonspecific statement, such as that a candidate is not 'sufficiently suited' for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnell Douglas*. It is, at bottom, a non-reason." *Id.* at 317.

Unlike in *Patrick*, the city councilmembers here have each provided a lengthy explanation of their concerns regarding Palacios's job performance. Though Palacios was officially terminated for "lack of confidence," it was only after Mayor Perez blocked Diaz's more specific resolution that the city council instead terminated Palacios for "lack of confidence" via a shorter, bare-bones motion. The city produced a great deal of evidence to demonstrate precisely what was meant by the city councilmembers' "lack of confidence" in Palacios. In addition to the deposition testimony, the record shows that the initial resolution to remove Palacios from her position listed specific reasons that the city council was dissatisfied: (1) the city council lost confidence in the ability of the city manager to manage the city according to generally accepted management principles; (2) the city manager knowingly failed to comply with the collateral agreement on a loan with the Zavala Country Bank which exposed the city to risk as a borrower; and (3) the city manager mismanaged the sales taxes approved by the voters that were designed for street repairs.

The city also relies on Palacios's performance evaluations from prior years. The evaluations are evidence that some members of the city council, including Lopez, had been dissatisfied with aspects of Palacios's performance for several years. Moreover, because these concerns were raised in Palacios's performance evaluations, she was aware of the city council's concerns and had the opportunity to address any deficiencies in her performance. In short, this

is entirely unlike a case in which the reason for termination is vague and unknown.

Palacios's response that she should have been permitted to refute the criticisms of her past performance at the time of her termination is not on point.    Whether the city councilmembers' opinions of Palacios's past performance were correct is not the proper question.    "[T]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bodenheimer*, 5 F.3d at 959; s*ee also Jackson v. Watkins*, 619 F.3d 463, 468 (5th Cir. 2010) (noting that "negative interactions" with employee was a specific enough reason to require showing that it was pretextual).   The issue is not whether the city council's view that Palacios's performance was poor was correct, but only whether it terminated her because of its dissatisfaction with her performance or because of a discriminatory reason.   *See Bodenheimer*, 5 F.3d at 959.

Palacios next argues that Sendejo and Diaz could not have formed an opinion of her performance because they were not city councilmembers until 29 days before they terminated her.   As the district court observed, "Diaz and Sendejo both explained how they came to form their respective opinions that [Palacios] had performed poorly as the City's manger [sic].   Both men resided in Crystal City during the time which [Palacios] was the City's manager and kept abreast of local issues by reading the newspaper and discussing their concerns with other officials and residents in the community."   The district court correctly concluded that, "[this] is a sufficient basis upon which Diaz and Sendejo could form an opinion as to whether [Palacios] should continue to be employed as the city manager."

Palacios also contends that the city council's failure to follow its city charter procedures for terminating the city manager is evidence of pretext.

Failure to follow a policy or procedure may be probative of discriminatory animus where there is proof that the employee was treated differently than other employees. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (internal quotation marks omitted). Here, however, the conduct of the city council provides no indication of a discriminatory motive regarding the policy deviation. *See Martinez v. Tex. Workforce Comm'n–Civil Rights Div.*, No. A-11-CA-837, 2014 WL 931425, at *7 (W.D. Tex. Mar. 10, 2014) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005). The undisputed record evidence shows that Diaz actually did try to remove Palacios via a resolution, in accordance with the city charter procedures, but that this avenue was blocked by then-Mayor Perez.

Palacios next argues that the disparity between her qualifications and her replacement Gallegos's qualifications is so vast that the disparity is evidence of pretext. *See Bright v. GB Bioscience. Inc.*, 305 F. App'x 197, 205 n.8 (5th Cir. 2008) (unpublished). In the first instance, Palacios was actually replaced by interim city manager John Camarillo, who is also over fifty. Even assuming *arguendo* that we should properly compare her qualifications to Gallegos's qualifications, she fails to create a genuine issue of material fact on this point. Lopez testified in his deposition that Palacios herself did not meet all of the stated qualifications for the job posting when she was hired. Palacios does not dispute this. The city council's advertisement for a new city manager listed several different combinations of education and experience as qualifications for the city manager position, but also included the catch-all of "any equivalent combination of experience and training which provides the required knowledge, skills, and abilities." When Gallegos was hired he had the formal education sought in the city council's advertisement, but lacked municipal experience. Lopez testified that "budget-wise . . . we . . . unfortunately have to . . . settle for sometimes the best applicants that don't

11

meet the criteria." As the district court explained, there is no evidence that the other candidates were more qualified, and Gallegos had private-sector financial experience at a time when the city was facing a budget crisis.

Palacios next argues that Sendejo's deposition comments are circumstantial and direct evidence of discrimination because according to her, Sendejo testified that he wanted "younger blood" in city management. "Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct . . . a plaintiff [must] show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). To be direct evidence of discrimination, comments must be: "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (internal quotation marks omitted). Contrary to Palacios's argument, the record does not include any evidence that Sendejo said that he wanted any "younger blood" managing the city. Rather, the summary judgment evidence merely shows that constituents encouraged him to run for city council because they desired younger people in the city council context. Furthermore, this comment fails to meet other criteria for establishment of circumstantial or direct evidence of discrimination.

Because Palacios fails to create a genuine issue of material fact as to whether the city's legitimate, non-discriminatory reasons for her termination were pretextual, the district court's grant of summary judgment on the ADEA claim was correct.

No. 14-51176

### B.

Palacios also appeals the district court's grant of summary judgment on her Title VII sex discrimination claim. To establish a *prima facie* case of sex discrimination, Palacios must show that: "(1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 363 (5th Cir. 2013). The *McDonnell Douglas* burden-shifting framework applied above is also used to analyze Palacios's sex discrimination claim. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). The parties assume here, as they did below, that Palacios has stated a *prima facie* case of sex discrimination. The burden then shifts to the city to offer a legitimate, non-discriminatory reason for Palacios's termination.

The city contends, as it did on the age discrimination claim, that Palacios was terminated because of her poor work performance and the city council's lack of confidence in her ability to manage the city. The evidence supporting the legitimate, non-discriminatory reasons is the same as discussed above, in relation to the age discrimination claim. Because the city has satisfied its burden of offering a legitimate, non-discriminatory reason for Palacios's termination, the burden shifts back to Palacios to create a genuine issue of material fact as to whether the city's reasons were pretextual.

Palacios offers, with the exception of the "younger blood" comment, the same arguments about pretext in her sex discrimination claim as she does in her age discrimination claim. As discussed above, none of her arguments are sufficient to create a genuine issue of material fact as to whether the city's proffered reasons were pretextual. The district court correctly granted summary judgment on Palacios's Title VII sex discrimination claim.

13

No. 14-51176

## C.

Palacios also argues that the district court erred when it denied as moot her motion to strike. This court reviews a district court's decision on a motion to strike for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

Palacios does not identify the evidence to which she objects. In the district court, she moved to strike the declarations of Councilmember Diaz, Councilmember Sendejo, and Mayor Lopez. We assume that this is the evidence to which she objects here. She makes this argument in a single paragraph and fails to cite any cases in support of the argument. This argument is thus forfeited. Fed. R. App. P. 28(a)(8)(A) (requiring appellant's brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies"); s*ee also United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) ("We normally disregard arguments not briefed or raised for the first time at or after oral argument."); *Craig v. Dall. Area Rapid Transit Auth.*, 504 F. App'x 328, 333 (5th Cir. 2012) (unpublished) ("the contours of [appellant's] argument are vague and not adequately argued in the briefs, so her claim is forfeited"). Moreover, even assuming *arguendo* that the claim is not forfeited, the district court did not rely on the challenged evidence in its analysis.

## III.

Because Palacios has not created a genuine issue of material fact as to whether the city's legitimate, non-discriminatory reasons for her termination were pretextual, the district court's grant of summary judgment is AFFIRMED.